THE MURPHEY-HARDY LUMBER COMPANY, PLAINTIFF BELOW AND IN ERROR, v. HARRY J. NICHOLAS, BUILDER, AND SUSAN A. VAN SYCKEL, OWNER, DEFENDANTS BELOW AND IN ERROR.

Argued February 21, 1901—Decided June 10, 1901.

A paper-writing, purporting to be a building contract, filed with the county clerk, stated the price of the building as $5,100. The real price agreed on by the contracting parties was $4,100. *Held,* that the filing of such paper-writing did not, under the Mechanics' Lien law (*Pamph. L.* 1898, *p.* 538), operate to make the building and its curtilage liable to the contractor alone for work done or materials furnished in pursuance of the real contract.

---

On error to the Essex County Circuit Court.

The plaintiff brought suit in the Circuit Court of the county of Essex, and in his declaration averred that the debt

sued for, contracted by the defendant Harry J. Nicholas, was, by virtue of "An act to secure to mechanics and others payment for their labor and materials in erecting any building" [Revision of 1898], approved June 14th, 1898 (*Pamph. L., p.* 538), a lien upon a dwelling-house and curtilage therein described of Susan Van Syckle, owner. The builder did not defend. The owner filed pleas—*first,* that the builder did not undertake or promise as complained, and *second,* that her house and lands described in said declaration were not liable to the supposed debt. The cause came on for trial upon these issues. A proper lien claim, duly filed, was offered in evidence. A debt of $299.63 as sued for was proved, and, for the purposes of the suit, it was admitted that said debt was for materials furnished by the plaintiff for that house and used therein. The builder was called as a witness for the plaintiff, and testified that he had erected the building in question, under a contract with the owner, the terms of which were not stated. On cross-examination he testified that the building was erected in accordance with the specifications annexed to a paper-writing purporting to be a contract between himself and such owner to erect such a building for $5,100. On the plaintiff resting its case, a motion to nonsuit was denied, and the defendant then proved the execution of the paper-writing referred to and offered the same in evidence, and also proved that such paper-writing was filed with the clerk of Essex county before the furnishing of such materials, and then rested her defence. In rebuttal the court entertained the following offer in behalf of the plaintiff:

"Mr. Guild—I offer to prove that the real contract between these parties was for the erection of a house to cost $4,100; I also offer to prove that Thomas A. Murphey, president of the plaintiff company, examined the contract on file, and finding that it called for a house to cost $5,100 he sold and delivered to Nicholas the materials set out in the lien claim in this suit for the erection of this house; I also offer to show that at $5,100 there would have been a profit to the builder putting up this building, but that at $4,100 there would not have been; and that it was the fact that the contract stated

that $5,100 was to be paid that induced the plaintiff company to part with its material; I also offer evidence going to show that the bid submitted by Nicholas for the erection of this house was $4,100."

The court excluded the evidence, and directed a verdict in favor of the defendant. Upon exceptions sealed to these rulings the present writ of error, brought upon the consequent judgment, was argued.

Before DEPUE, CHIEF JUSTICE, and Justices DIXON, COLLINS and HENDRICKSON.

For the plaintiff in error, *Frederick F. Guild.*

For the defendant in error, *Elwood C. Harris.*

The opinion of the court was delivered by

COLLINS, J. The pertinent provisions of the Mechanics' Lien law, above cited, are as follows:

"1. Every building hereafter erected or built within this state shall be liable for the payment of any debt contracted and owing to any person for labor performed or materials furnished for the erection and construction thereof, which debt shall be a lien on such building, and on the land whereon it stands, including the lot or curtilage whereon the same is erected.

"2. Whenever any building shall be erected, in whole or in part, by contract in writing, such building and the land whereon it stands shall be liable to the contractor alone for work done or materials furnished in pursuance of such contract; provided, said contract, or a duplicate thereof, together with the specifications accompanying the same, or a copy or copies thereof, be filed in the office of the clerk of the county in which such building is situate before such work done or materials furnished.

"3. Whenever any master workman or contractor shall, upon demand, refuse to pay any person who may have furnished materials used in the erection of any such house or other

building, or any journeyman or laborer employed by him in the erecting or constructing any building, the money or wages due to him, it shall be the duty of such journeyman or laborer or materialman to give notice, in writing, to the owner or owners of such building of such refusal, and of the amount due to him or them so demanded, and the owner or owners of such building shall thereupon be authorized to retain the amount so due and claimed by any such journeyman, laborer or materialman out of the amount owing by him or them on the contract, or that may thereafter become due from him or them on such contract for labor or materials used in the erection of such building, giving the masterworkman or contractor written notice of such notice and demand; and if the same be not paid or settled by said masterworkman or contractor, such owner or owners, on being satisfied of the correctness of said demand, shall pay the same, and the receipt of such journeyman, laborer or materialman for the same shall entitle such owner or owners to an allowance therefor in the settlement of accounts between him and such masterworkman or contractor, or his representatives or assigns, as so much paid on account.

"5. If the owner or owners of any building or other property which, by this act, is made the subject of liens for or toward the construction, altering, repair or improvement of which labor or services have been performed or materials furnished by contract, duly filed, shall, for the purpose of avoiding the provisions of this act, or in advance of the terms of such contract, pay any money or other valuable thing on such contract, and the amount still due to the contractor, after such payment has been made, shall be insufficient to satisfy the notices served in conformity with the provisions of this act, such owner or owners shall be liable in the same manner as if no such payment had been made."

The normal effect of this legislation is to subject lands upon which a building is erected, by authority of the owner, to a lien in favor of anyone who furnishes labor or materials therefor. To limit this effect strict compliance with the proviso of the second section of the act is essential. The

real contract between the parties must be in writing, and that, or a duplicate, must be filed. The filing of a supposititious contract will not suffice. The argument is without merit that the only purpose of the requirement is to advise those interested that a contract exists. If this were all that was intended by the legislature a simple statement to that effect would have been prescribed. As the law was orginally framed (*Pamph. L.* 1853, *p.* 437; *Rev., p.* 668) the words "together with the specifications accompanying the same," now in section 2 above quoted, did not appear; and soon after its enactment it was judicially held, or, as some have thought, legislated, that where the contractor was to do all the work and furnish all the materials for a building it was not necessary to file annexed specifications, although referred to in the contract, and thus made a part of it. *Babbitt* v. *Condon,* 3 *Dutcher* 154; *Budd* v. *Lucky,* 4 *Id.* 484, followed in later years because of the doctrine of *stare decisis.* The present form of the statute evinces a legislative intent that the document filed shall show the complete contract. It had been previously held that where the contract was partial only, the filing of the specifications could not be dispensed with. *Ayres* v. *Revere,* 1 *Id.* 474. I doubt if Chief Justice Green, who read the opinion in the case last cited, would have concurred in the view that they could ever be dispensed with when made a part of the contract. He sat in Babbitt *v.* Condon, but did not find it necessary to concur in the views expressed for the court by Mr. Justice Haines on that subject. His concurrence in the advice to the Circuit Court given upon that occasion was based on another ground. He said, in Ayres *v.* Revere: "A contract may, perhaps, be so drawn that the specifications shall form no necessary part of the contract within the purview of this act. They may constitute no essential part of the contract as between the owner and lienholder; but the contract in the present case, in express terms, declares that the specifications and plans signed by the parties shall be made and considered to be a part of the agreement;" and in such a case he held their filing essential. While, as said in this case, no liberality of construction of the Lien law will

be indulged, it is also true, as remarked by Vice Chancellor Van Fleet, in *Dalrymple* v. *Ramsey,* 18 *Stew. Eq.* 494, 496, that the courts can neither enlarge nor lessen its requirements.

No one will contend that in a case where specifications must be filed any other than the true ones will satisfy the act. It may possibly be that the contract need not state the consideration passing from the owner or to the builder; but, if it professes to do so, it must truly state it. The Chief Justice said, in Ayres *v.* Revere: "The beneficial design of the act must have been to enable parties interested before the work was done or materials furnished to ascertain whether they must look to the responsibility of the builder, or may rely upon the security of the building itself."

The filing of a contract does not preclude a lien for work and materials outside the contract. *Willetts & Co.* v. *Earle,* 24 *Vroom* 270. This case was reversed upon error, but this doctrine was not disavowed. *Earle* v. *Willetts & Co.,* 27 *Id.* 334. In case, therefore, of a contract for an entire building where, under the former law, no specifications were filed, the persons interested would have to inquire of the owner their nature and extent. In a case where the contract price is not stated, information must be sought on that subject, but where the price is stated, reliance may safely be placed upon it, and there is just reason that this should be so. If the contract be duly filed, a subcontractor or materialman, though thereby precluded from his lien on the building and land, may, nevertheless, acquire an inchoate lien upon the contract price, and in determining whether or not to give credit to the builder, such price becomes important to him. *Slingerland* v. *Binns,* 11 *Dick. Ch. Rep.* 413.

It is argued that because, as was decided in *Smith* v. *Dodge & Bliss Co.,* 14 *Dick. Ch. Rep.* 584, a secret arrangement between owner and builder variant from the filed contract will not defeat a claim under section 3 of the act, therefore the plaintiff's remedy in the present case is under that section. Doubtless, resort might have been had to that section—perhaps it may be in any case—but that remedy is not inconsistent with the lien given by section 1. Because the owner would

be estopped from denying the truth of the filed contract, is no reason that the lien claimant should not be allowed to prove its falsity.

If the evidence excluded in this case had been admitted it would have tended to prove that the materials furnished by the plaintiff to the builder were not embraced in a contract in writing with the owner, duly filed with the county clerk, and therefore a lien might have been established.

The judgment of the Circuit Court is reversed.