RICHARD ENGLISH

*v.*

JAMES WARREN et al.

[Submitted February 5th, 1903.   Decided April 20th, 1903.
Filed June 19th, 1903.]

1. Filing of the specifications is essential under Mechanics' Lien law (*Rev. of 1898 p. 538*), section 2 providing that a building shall be liable only to the contractor, provided the contract, together with the specifications accompanying it, be filed.

2. Under Mechanics' Lien law (*Rev. of 1898 p. 538*), section 2 providing that a building shall be liable only to the contractor, provided the contract, together with the specifications accompanying it, be filed, and section 3, giving the remedy by stop-notices to materialmen who have furnished materials used in the erection of "such house," the remedy by stop-notices is limited to houses where the contract and specifications have been filed.

3. A contractor for a building, who signed an order directing the owner to pay to the materialman who had served the first stop-notice the amount due to him from the contractor, was not induced to do so by fraud because not told of the defect in filing of the contract whereby the stop-notices were ineffectual, he having, after being reminded that the materialman was first in priority, and having said that he desired him to be paid in full, been told that there was doubt about his being paid in full under the stop-notice, and that the object of his signing the order was to make the payment certain.

4. The owner of a building who files an interpleader against materialmen to determine the distribution of the sum due the contractor, is not entitled to costs, having claimed such sum was considerably less than that the court found to be due.

On final hearing on bill, answer and proofs.

*Mr. Charles L. Corbin,* for the complainant.

*Mr. James F. Fielder,* for the defendants James Warren and Dodge, Bliss & Company.

*Mr. Peter Bentley,* for James F. Stewart Company.

English *v.* Warren.

*Mr. Robert S. Hudspeth,* for the defendants Bossert & Son and Jacob Ringle & Son.

*Mr. John S. McMaster,* for Wood & Menagh.

Pitney, V. C.

This is an interpleader suit.

The complainant, as owner of 304 Montgomery street, Jersey City, entered into a contract, in writing, with James Warren for the erection of a building thereon to cost $7,100.

The contract, as usual, referred to specifications, and that they were annexed.

The contract only, without the specifications, was filed.

Warren procceded with the erection of the building, and received on account of the contract price $4,000; then abandoned it, and it was finished by the complainant, under a provision in the contract.

Five parties, defendants herein, served stop-notices on the complainant, in the following order: Dodge & Bliss, J. F. Stewart Company, Jacob Ringle, Wood & Menagh and Bossert & Son.

These notices were all served under the third section of the Mechanics' Lien law (*Rev. of 1898 p. 538*), all parties supposing that the contract had been filed in such manner as to satisfy the second section of that act.

No action was taken to enforce either of those claims until the expiration of the time limited for filing lien claims under the first and sixteenth sections of the act.

On the 29th of August, 1902, some of the lien claimants and the defendant Warren met at the office of Corbin & Corbin, the counsel of the complainant, and there a statement was made up of the amount due each of the claimants and the date of the service of their several stop-notices, and under that statement was written and signed, by Warren, the following memorandum:

"Above five items of claims are correct, and I authorize Richard English to pay the same, *pro rata*, out of the funds in his hands as the same may be found due to me.

"Dated August 28th, 1902.        Signed  JAMES WARREN."

The amount due from complainant to Warren was not at that or any time agreed upon, but was fixed by the court at the hearing and after litigation at the sum of $2,030.29, considerably more than complainant admitted, and enough to pay about sixty cents on the dollar to the creditors.

The case so far stated presents the simple question whether the contract was filed in such manner as to satisfy the terms of the second section of the Lien act.

The section provides that the building and land shall be liable only to the contractor, provided the contract or a duplicate or copy, *together with the specifications accompanying the same,* be filed, &c.

This provision for filing the specifications found its way into our system of legislation by the act of March 14th, 1895 (*P. L. of 1895 p. 313*), and was intended to clear up the confusion in the law arising out of the old statute, which did not expressly include the specifications, and which is reviewed by Mr. Justice Collins, in *Murphey-Hardy Lumber Co.* v. *Nicholas, 37 Vr. 414.*

Probably the immediate occasion of the amendment was the opinion of this court in *Freedman* v. *Sandknop, 8 Dick. Ch. Rep. 243.* Be that as it may, I am clearly of the opinion that the statute is peremptory, and that the failure to file the specifications left the land and building subject to the filing of lien claims under the first and sixteenth sections of that act. Such seems to have been the opinion of Vice-Chancellor Grey, in *Weaver* v. *Atlantic Roofing Co., 12 Dick. Ch. Rep. 547.*

The same opinion establishes the necessary corollary to this result, namely, that the stop-notices served under the third section of the act are valueless. That section gives the remedy by stop-notices only to materialmen (and all of the defendants herein are materialmen) "which may have furnished materials used in the erection of *such house* or other building."

The word "such" confines the section to buildings which are protected from the imposition of the ordinary lien claim by reason of the owner having complied with the terms of the section which immediately precedes it, and that is the second section.

This result subjects the fund in the hands of the complainant

English *v.* Warren.

to the operation of the *pro rata* assignment of August 28th, 1902, with a single exception next to be considered.

The defendants Dodge, Bliss & Company claim the right to be paid in full by virtue of two writings signed by said Warren, one dated April 23d, 1902, and the other dated August 28th, 1902, which latter is the day before the date of the assignment above set forth.

That of the 23d of April is in the shape of an affidavit, the part of which that is relied upon is as follows:

"That deponent is still indebted to said Dodge and Bliss Company in the said sum of seven hundred and fifty-two dollars and nineteen cents ($752.19) for said material, and *is willing that said Richard English should pay the said sum to Dodge & Bliss Company out of the money due from said Richard English to deponent under said contract.*"

The one dated August 28th, 1902, is a formal order, addressed to the complainant, asking him to pay to Dodge, Bliss & Company the sum of $752.19, the amount due from Warren to them for material furnished for the construction of the building in question, and to charge the same to the money due from English to Warren on account of the contract in question.

The serious question in the case is as to the efficiency of those writings, or one of them, to give Dodge, Bliss & Company a preference over the other creditors.

I will consider the order dated August 28th, 1902, first, because, if that is valid and effectual, it disposes of the question. Although it bears the same date with the paper signed by Warren directing English to pay the balance due him to the materialmen *pro rata,* it was, in point of fact, executed the day before that paper; and the assignment to all the creditors, though dated the 28th of August, was actually signed on the 29th.

The fact is that counsel for Dodge, Bliss & Company were the only one of the creditors who appears to have discovered the defect in the filing of the contract, and on the 28th of August they prepared the order of that date and handed it to Mr. Gilson, the collecting agent of Dodge, Bliss & Company, with instructions to procure the signature of Mr. Warren thereto. This

Mr. Gilson succeeded in doing, and on the morning of the 29th, prior to the meeting of the creditors and the signature by Mr. Warren of the other paper, it was served on Mr. English; and when the creditors met on that day in the office of Messrs. Corbin & Corbin there is evidence tending to prove that it was stated to the creditors by Mr. Corbin that such an order in question had been served on Mr. English. It would further appear that the several creditors, other than Dodge, Bliss & Company, then for the first time became aware of the defect in the filing of the contract, and the disposition which Mr. Warren proposed to make of the amount due him from English on the contract.

The objection made by those creditors to the order of August 28th is that it was procured from Warren by a fraud practiced on him by Gilson, the agent of Dodge, Bliss & Company. Warren and Gilson were examined and cross-examined at great length, and the net result of such examination I think may be fairly stated as follows: Warren was aware at the time the order was presented to him that Dodge, Bliss & Company and the other creditors had served upon English stop-notices, and he was also aware that, under ordinary circumstances, the amounts claimed in those stop-notices would be paid in the order of the date of their several services; and he was also aware that Dodge, Bliss & Company were first with their stop-notice, and, under ordinary circumstances, would be first paid. Being in that frame of mind, he was waited upon by Mr. Gilson, who presented the order and asked him if he would sign it, and reminded him that Dodge, Bliss & Company were the first in order of priority, and asked him if he wished them to get their pay in full. Mr. Warren answered that he did. Thereupon Mr. Gilson said that there was some doubt about their being paid the amount due them in full under their stop-notice, and that the object of the signature to the order by him was to render payment of that certain.

Warren then signed the order voluntarily, knowing that it would have the effect of aiding Dodge, Bliss & Company in being first paid, if the stop-notice, which they had already given, was insufficient for that purpose. It is inferable from his evi-

dence that he was not aware of the defect in the filing of the contract, and yet there is one piece of evidence which indicates that on the very same day he had in some manner given Messrs. Corbin & Corbin, or one of their firm, the idea that he desired to have the money due him on the English contract divided *pro rata* among the claimants thereto, for what is termed the assignment *pro rata* is in the handwriting of Mr. Charles L. Corbin, and is dated, as I think plainly, the 28th of August; and while Mr. Corbin was not called as a witness, I think it is safe to infer that, when he prepared and dated that short assignment, he had reason to believe that Warren would willingly sign it. Be that as it may, I am unable to perceive any fraud practiced upon Warren by Gilson in the procuration of the signature to that order.

I come to this conclusion with regret, because, as I have had occasion, in common with some of my brother vice-chancellors, heretofore to state on more than one occasion in connection with the operation of the present remedy under the third section of the Mechanics' Lien law, which gives to materialmen priority over the fund in the order in which they are fortunate enough to be able to serve their stop-notices, I think it is most inequitable in its operation, and I would be glad to see this fund divided *pro rata* among all the lien claimants.

But the law is very clear that at the moment the order here in question was signed the fund was subject to the disposition of Mr. Warren, and he signed the order without any false representations made to him; it was duly presented to Mr. English, and the result was that it worked, in equity, an assignment of that much of the amount due Warren to Dodge, Bliss & Company, and I am obliged to so find, and to advise a decree accordingly.

Dodge, Bliss & Company must then be first paid out of the fund, and the balance must be divided *pro rata* among the other four claimants.

With regard to the costs, the complainant is not entitled to costs out of the fund, for the simple reason that in his bill he distinctly and clearly claimed that the amount due from him to Warren, which he was ready and willing to pay into court

and be discharged, was considerably less than the amount which the court, upon a careful consideration of the evidence, found to be due. In other words, the issue was joined between the complainant and the assignees of Warren as to the amount due, and the complainant was beaten on that issue.

In regard to the defendants, I think, as at present advised, the best adjustment of the matter of costs and interest is to allow the fund to be divided, as above stated, without interest or costs allowed to either party.