EDWIN F. PFEIFER et al., complainants,

*v.*

ROBERT A. REIMAN et al., defendants.

[Decided July 8th, 1932.]

*Messrs. Osborne, Cornish & Scheck,* for the complainants.

*Mr. Louis B. Zavin,* for the defendant Adolph K. Artke.

*Mr. Albert C. Kraft,* for the defendant Frederick Schill & Company, Incorporated.

*Mr. William J. Jaeger,* for the defendant Theodore August and also for George Hensen, trading as Irvington Hardware Company.

*Messrs. Levy, Fenster & McCloskey* (by *Mr. Nicholas Vitello*), for the defendant Birkenmeier & Kuhn Company, Incorporated.

*Mr. Michael G. Alenick,* for the defendants W. A. Thornley & Company, Incorporated, and Russell C. Gavett.

*Messrs. Bennett & Hanschka,* for the defendant Grover C. Porch.

*Mr. Benjamin Cohn,* for the defendant Thomas Roofing Company.

*Mr. Isador V. Davis,* defendant, *pro se.*

*Mr. Harry C. Brown,* for the defendant Watchung Garden Nurseries, Incorporated.

*Messrs. Stickel, Waldeman & Duveneck,* for the defendant Bing & Fink.

*Mr. Max Krueger,* for the defendant Andrew Isenberg.

*Mr. David H. Yonteff,* for the defendant F. Storsberg Company.

BERRY, V. C.

This is an interpleader suit. The complainants allege that on September 12th, 1930, a written contract was entered into by one Adolph Kulzer with Robert A. Reiman, under which Reiman agreed to erect a dwelling house in Maplewood, New Jersey, for Kulzer, at a cost of $19,500. Before any work was done or materials furnished the contract was filed in

the office of the clerk of Essex county. At the time the contract was executed, and at all times thereafter, the complainants were *the record owners* of the land upon which the building was erected, and Kulzer was actually the agent of the complainants in executing the contract, although it was not so stated therein, nor was there any record or other notice of these facts to the defendants until after default by the contractor. Reiman abandoned his contract shortly before its completion leaving unfinished work estimated to cost $610. After deducting this $610 from the money in their hands the complainants had a balance of $4,665.51 for which they admit liability to the contractor, or to persons who furnished labor and material.

Most of the materialmen filed stop notices under section 3 of the Mechanics' Lien act, some of the notices being directed to the owners and some to Kulzer. In addition, claims were served upon the owners by persons to whom the contractor had given orders and by one materialman who held an assignment.

The total of these claims by the stop notice claimants and assignees was in excess of the funds in the hands of the owners, hence this bill.

On April 9th, 1931, the bill of complaint was adjudged as confessed against all of the defendants, and an interlocutory decree entered.

The taxed costs allowed to the complainants were $192.98, leaving a balance of $4,472.53, which is now on deposit in this court for distribution among the various claimants.

When the case came on for final hearing the parties entered into a written stipulation of facts in which it was agreed that the building contract referred to, with specifications attached, and was filed in the office of the clerk of Essex county on September 15th, 1930, which was before any work was done in the erection of the building; that the contract was between Adolph Kulzer and Robert A. Reiman; that Kulzer was referred to throughout the contract as the owner; that there is nothing in the contract to show that he was acting as the agent for the Pfeifers and that the Pfeifers

were the owners of record on the date of the execution of the contract, which was September 12th, 1930.

The facts concerning the stop notices and assignees as shown in the stipulation are as follows:

## STOP NOTICE CLAIMANTS

| Name | Date of Filing | Directed to | Amount |
|------|----------------|-------------|--------|
| Passaic-Bergen Lumber Co. | January 17, 1931 | Adolph Kulzer | $991.81 |
| Watchung Garden Nurseries, Inc. | January 21, 1931 | Adolph Kulzer | 256.00 |
| Andrew Isenberg | January 24, 1931 | Adolph Kulzer | 1,175.00 |
| Birkenmeier & Kuhn Co. | February 5, 1931 | Adolph Kulzer | 283.50 |
| Grover C. Porch | February 6, 1931 | Adolph Kulzer | 1,700.00 |
| Louis Wesson | February 7, 1931 | Adolph Kulzer | 282.00 |
| Birkenmeier & Kuhn Co., Inc. | February 7, 1931 | Edwin F. Pfeifer and Helen P. Pfeifer This is a duplicate | 283.50 |
| W. A. Thornley Co. | February 9, 1931 | Edwin F. Pfeifer and Helen P. Pfeifer | 1,389.11 |
| F. Storsberg | February 10, 1931 | Adolph Kulzer | 500.00 |
| Adolph K. Artke | February 10, 1931 | Edwin F. Pfeifer and Helen P. Pfeifer | 230.00 |
| Thomas Roofing Co. | February 10, 1931 | Adolph Kulzer former owner—Edwin F. Pfeifer present owner | 540.00 |
| Geo. P. Heuser, trading as Irvington Hardware Co. | February 11, 1931 | Edwin F. Pfeifer, Helen P. Pfeifer, Adolph Kulzer and Robert Reiman | 39.75 |
| Frederick Schill & Co. | February 19, 1931 | Adolph Kulzer | 1,152.25 |
| Bing & Fink | February 19, 1931 | Edwin F. Pfeifer and Helen P. Pfeifer or Adolph Kulzer | 185.00 |
| Theodore August | February 24, 1931 | Edwin F. Pfeifer and Helen P. Pfeifer, Adolph Kulzer and Robert Reiman | 182.00 |
| Frederick Schill & Co. | March 9, 1931 | Edwin F. Pfeifer and Helen P. Pfeifer This is a duplicate | 1,152.25 |

ASSIGNMENTS AND ORDERS

| Name | Date | Amount |
|---|---|---|
| Grover C. Porch (assignee) | January 24, 1931 | $1,700.00 |
| Andrew Isenberg | January 27, 1931 | 1,175.00 |
| Adolph K. Artke | January 27, 1931 | 530.00 |
| Theodore August | January 27, 1931 | 212.00 |
| Reese Metal Weatherstrip Co. (duplicate of Bing & Fink) | February 10, 1931 | 185.00 |
| Russell C. Gavett | January 30, 1931 | 213.45 |
| F. Storsberg Co. | February 2, 1931 | 500.00 |

(This last order is not mentioned in the stipulation but appears as an exhibit.)

The exhibits also show that there was one other order given, but not mentioned in the stipulation, to Abraham Schottenfeld for $122, dated January 20th, 1931. There was no statement of claim filed by this defendant, and it may be assumed that it was either paid or abandoned.

The stipulation and the exhibits disclose that the defendant, W. A. Thornley Company, Incorporated, obtained a judgment against the owners specially and against Reiman generally in a mechanics' lien suit. The claim was filed on or about May 25th, 1931, and the suit started on the same day. Judgment was entered on September 30th, 1931, in the sum of $1,520.90.

It is apparent, therefore, that there are four groups of claimants to this fund, viz.:

1. The mechanics' lien creditor whose judgment is for $1,520.90.

2. The holders of the assignment and orders whose claims total $4,015.25.

3. Stop notice claimants who directed their notices to the Pfeifers as owners.

4. Stop notice claimants who directed their notices to Kulzer as owner.

The mechanics' lien claimant, the assignee and the holders of the orders, excepting Gavett, filed stop notices. The total of all claims is $9,082.46.

W. A. Thornley Company, Incorporated, and the holders of the assignment and the orders contend that the only

remedy in this case was by lien claim, and that the filing of stop notices was ineffective for the reason that the building contract was not signed by the owner of record as required by section 2 of the Mechanics' Lien act as amended in 1930.

Prior to the amendment the wording of section 2 of the statute was as follows: "Whenever any building shall be erected in whole or in part by contract, in writing, such building and the land whereon it stands shall be liable to the contractor alone for work done or materials furnished in pursuance of such contract, &c."

It was held under this statute that if the contract was signed by an authorized agent of the owners it was sufficient to deny to everyone except the contractor the privileges of filing mechanics' liens. *S. A. Willetts & Co.* v. *Earl, 53 N. J. Law 270; 21 Atl. Rep. 327.*

The amendment adopted in 1930 required that the contract shall be signed by the owner, the language of the amended section being as follows:

"Whenever any building, or an addition to any building, shall be erected, constructed, completed, altered or repaired in whole or in part by contract in writing, signed by the record owner of the estate or interest in the land which is to be charged with the lien hereunder, such building, and the land whereon it stands, to the extent of the estate or interest so charged, shall be liable to the contractor alone for the work done or materials furnished in pursuance of such contract."

The amendment went into effect on September 1st, 1930, and the contract in this case was made on September 12th, 1930. The record owners at the time of the execution of the contract were Edwin F. Pfeifer and Helen P. Pfeifer. The contract was signed by one Adolph Kulzer. The filing of the contract did not preclude the right of mechanics' liens and did not make available the remedy by stop notice. *Weaver* v. *The Atlantic Roofing Co., 57 N. J. Eq. 547; 40 Atl. Rep. 858; English* v. *Warren, 65 N. J. Eq. 30; 54 Atl. Rep. 860.*

In the *Weaver Case* the building contract was filed without specifications. A number of materialmen served stop notices

upon the assumption that the filing of the contract effectually prevented the filing of liens by anyone but the contractor. Some materialmen served upon the owner orders for payment of money given to them by the contractor.

The owner filed a bill of interpleader. The defendants filed answers substantially admitting the facts set forth in the complainant's bill, but disputing as between themselves the priority of their several claims upon the fund. A decree was made to the effect that the complainant was entitled to the relief prayed for and that the defendants interplead and adjust their claims upon the fund as between themselves. An agreed statement of facts was entered into by all the defendants.

Vice-Chancellor Grey held that the filing of the contract without the specifications did not relieve the land from liability to lien, and that consequently workmen and materialmen had no right to resort to the remedies provided by the third section of the statute. In his opinion he said (page 552):

"This condition renders ineffectual all the notices claimed to have been given by workmen and materialmen to the owner to retain and pay from the contract price, by virtue of the provisions of the latter section. All who were in this class of creditors of the contractor had their remedy by filing a lien claim under the first section and the other provisions of the act, from which they were not precluded by the filing of the contract alone.

"The effect of this situation was that the contract price was left in the hands of the owner open to the disposition of the contractor by giving orders upon it in the nature of equitable assignments."

As to the form of the assignments with which he had to deal he said, "that no particular form of words is necessary to constitute an equitable assignment. Any writing or act which indicates the intent of the assignor to make an apropriation of the fund, or part of it, will in equity be enforced as an assignment." He distributed the fund among the holders of the assignments.

Vice-Chancellor Pitney reached the same conclusion in the case of *English* v. *Warren, supra.*

There is an intimation in the opinion of Mr. Justice Collins in the case of *Murphey-Hardy Lumber Co.* v. *Nicholas, 66 N. J. Law 414; 49 Atl. Rep. 447,* that where a filed contract did not state the true consideration and a materialman filed a lien claim, there was nevertheless open to him the right to file a stop notice.

On page 419 Mr. Justice Collins said:

"It is argued that because, as was decided in *Smith* v. *Dodge & Bliss Co., 14 Dick. Ch. Rep. 584,* a secret arrangement between owner and builder variant from the filed contract will not defeat a claim under section 3 of the act, therefore the plaintiff's remedy in the present case is under that section. Doubtless, resort might have been had to that section —perhaps it may be in any case—but that remedy is not inconsistent with the lien given by section 1. * * *"

In view, however, of *Weaver* v. *The Atlantic Roofing Company* and *English* v. *Warren,* it is not open to question in this court that where the right of mechanics' lien is available the filing of stop notices is improper and ineffectual.

The amendment of 1930 requires that the contract be signed by the *record owner* in order that the materialmen and laborers shall be precluded from the right to file a mechanics' lien. Here, such a contract not having been filed, the right to file a lien remained and there was no remedy by stop notice under section 3. That the several claimants were decreed to interplead, that they filed statements and supplemental statements, and that the court took jurisdiction, is immaterial. Vice-Chancellor Grey had the same situation before him and held the stop notice ineffective.

It is unnecessary, therefore, to pass on the objection made in this case to those stop notices which were directed to the agent instead of the owners.

The controversy is thus confined to the mechanics' lien claimant, the holder of the assignment and the holders of the orders.

The mechanics' lien claimant filed a notice of intention as required by the amendment to the act on October 10th, 1930. It filed its lien and started suit within four months from the last date of the furnishing of material, and then entered judgment in due course, generally against the contractor and specially against the land and building.

While it has long been the established law of this state that the court of chancery has no power to enforce a mechanics' lien claim, that right being given exclusively to the law courts, it was nevertheless held by Vice-Chancellor Van Fleet in *Dalrymple* v. *Ramsey, 45 N. J. Eq. 494* (at *p. 497*); *18 Atl. Rep. 105* (at *p. 106*), that:

"Where a court of equity has acquired jurisdiction of a suit upon some well-established ground of equity cognizance, and the decision of the suit renders it necessary for the court, in order that full and complete justice may be done to all parties, to pass upon the rights of a person claiming a lien under this statute, the court may, in that case, settle and determine his rights, but not otherwise. \* \* \*"

If the court should hold that W. A. Thornley Company, Incorporated, the mechanics' lienor, must satisfy its judgment out of the land without recourse to the fund in court, and if the fund were paid over to the contractor or his assignees, the result would be that the owners would be paying the Thornley claim twice. This would be inequitable. They are entitled to have the fund first applied in satisfaction of the lien on their land. It might also result that the contractor himself would get back a part of the fund if the assignments aggregated less than the fund, even though he failed to pay the general judgment against him; but he has no equitable right to any of the money under such circumstances. He cannot be unjustly enriched at the expense of the owners; and the rights of his assignees rise no higher than his own. The money paid into court could have been used by the owners to pay the mechanics' lien judgment had the claim been filed before the institution of this suit; and the court has taken jurisdiction under a well-established ground of equity practice and has all of the parties before it.

The lien claim rights of W. A. Thornley Company, Incorporated, date back to the beginning of the building and antedate the assignment and the orders and this claimant should be paid first out of the money in court and the land relieved of its lien. The balance of the fund should be distributed, as far as it will go, among the assignee and those holding orders drawn by the contractor on the owners in the order of their respective dates of execution, there being no evidence that any of them were accepted by the owners. They are nevertheless valid in equity.

I shall advise a decree in accordance with these conclusions.